*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID KRIEGER, ANDREW KRIEGER, JAMES SPERLING, and MARGARET SPERLING, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY and DEPARTMENT OF NATURAL RESOURCES,

Defendants-Appellants.

FOR PUBLICATION
September 7, 2023
9:05 a.m.

No. 359895
Court of Claims
LC No. 20-000094-MM

———

THOMAS HOLLEY, KATHERINE HOLLEY, MONTY WISEMAN, JILL WISEMAN, THOMAS DECOE, MICHELLE DECOE, ROBERT MISHLER, JR, and SUSAN MISHLER, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY and DEPARTMENT OF NATURAL RESOURCES,

Defendants-Appellants.

No. 359896
Court of Claims
LC No. 20-000102-MM

———

CHRISTOPHER FORBES and LAURA FORBES, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

Defendant-Appellant.

No. 359897
Court of Claims
LC No. 20-000103-MM

PAMELA FAGAN, NICOLE KRAMER, and
SANDFORD HARDWARE 1, LLC, on Behalf of
Themselves and All Others Similarly Situated,

Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

Defendants-Appellants.

No. 359898
Court of Claims
LC No. 20-000111-MM

CARL SWARTHOUT, on Behalf of Himself and All
Others Similarly Situated,

Plaintiff-Appellee,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

Defendants-Appellants.

No. 359899
Court of Claims
LC No. 20-000112-MZ

ROBERT WOODS and HOLLY JOHNSON, on
Behalf of Themselves and All Others Similarly
Situated,

Plaintiffs-Appellees,

v

No. 359900

-2-

DEPARTMENT OF ENVIRONMENT, GREAT LAKES AND ENERGY and DEPARTMENT OF NATURAL RESOURCES,

        Defendants-Appellants,

and

ATTORNEY GENERAL,

        Defendant,

and

CITY OF SAGINAW,

        Other Party,

and

AUTO-OWNERS INSURANCE COMPANY,

        Intervening Plaintiff-Appellee.

Court of Claims
LC No.  20-000116-MM

---

JOE BRUNEAU, DAVID PHILLIPS, DANA RALKO, PATTY RALKO, MARY RANDALL, OSRO RANDALL, JAMES MRDUTT, and ALICIA MRDUTT, on Behalf of Themselves and All Others Similarly Situated,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY and DEPARTMENT OF NATURAL RESOURCES,

        Defendants-Appellants.

No.  359901
Court of Claims
LC No.  20-000118-MM

---

THOMAS BORCHARD, CHARLES BORCHARD, DENNIS BORCHARD, SALLY BRADLEY, CHRISTOPHER ICE, CDI CONSTRUCTION

GROUP, INC, TOM MCCANN FAMILY, LLC,
JOHN MADDENS, TYLIA MADDENS, BRIAN
PARENT, SHASTA PARENT, BARBARA
STEVENS, TROY VALLEY, LAUREN VALLEY,
and ROBERT EMMET WITT REVOCABLE
LIVING TRUST,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

        Defendants-Appellants.

No. 359902
Court of Claims
LC No. 20-000121-MM

---

PATRICK T. WORTLEY, doing business as
CRAWFORD INSURANCE AGENCY, KRYSTEIN
GILLETTE, JOSHUA GILLETTE, MATT
MCQUAID, MCQUAID MASONRY, LLC,
STEPHANIE O'DELL, MIKE ROBERSON,
RONALD ROENICKE, SANFORD CHAMBER OF
COMMERCE, SCOTT HARRIS, doing business as
SCOTT HARRIS BUILDER, CAROL SIEG, and
KENNETH SIEG,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

        Defendants-Appellants.

No. 359903
Court of Claims
LC No. 20-000140-MM

---

DARYL ZELENAK, SUZETTE GAY-ZELENAK,
MIKE CALLAN, and REGAN WEILAND, on
Behalf of Themselves and All Others Similarly
Situated,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

   Defendants-Appellants.

No. 359904
Court of Claims
LC No. 20-000151-MM

---

PLEASANT BEACH MOBILE HOME RESORT,
LLC, CAROL CLARKSON, DAVE CLARKSON,
BRIAN MATTHIAS, PATRICK PANGLE,
PATRICIA PANGLE, JARED NICKEL, MID
MICHIGAN PRESSURE CLEANING, LLC, MID
MICHIGAN WINDOW CLEANING & POWER
WASHING, LLC, doing business as MID
MICHIGAN CARPET CLEANING, JULIE VAN
AMEYDE, JOHN SMILNAK, RANDALL MIER,
and KIM MIER, on Behalf of Themselves and All
Others Similarly Situated,

   Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

   Defendants-Appellants.

No. 359905
Court of Claims
LC No. 20-000156-MM

---

PAUL CODER, JASON DERUS, KURT FAUST,
REBECCA FAUST, CARL STEVEN KOCKS,
LISA KOCKS, ROBERT MUSSELL, JOY
MUSSELL, ROSS NOEL, KAREN NOEL,
WAYNE SHANDS, CAROL SHANDS, DENICE
TRUELOVE, LUKE DINNAN, JILL DINNAN,
MICHELL LAFOND, RYAN RICHMOND,
SARAH RICHMOND, JOHN DOWGIALLO, and
SANDRA DOWGIALLO,

   Plaintiffs-Appellees,

v

No. 359906
Court of Claims

DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY and DEPARTMENT OF NATURAL RESOURCES,

LC No.   20-000230-MM

Defendants-Appellants.

TINA REINIG, GLORIA GROVER, MARY MAY, RAUL VELASCO, RICHARD WOLF, RONALD KIPFMILLER, MARK LICKTEIG, SHANE NICKERSON, TERRY VISNAW, KARIE DINGMAN, JOSEPH KRUEGER, CLEORIA FRENCH, LAWRENCE DUREK, JARED BRUNER, LORI FEINAUER, MARQUETTA MAXWELL, TEAL SAYLOR, JODY ROGERS RODRIGUEZ, TERRA DESHIELDS, JAMES SMAZENKA, WADE WHITE, THOMAS SHEPHERD, MELISSA WINCHELL, JUDY KOEPPLINGER, JORDAN EDWARDS, JERRY VESPRINI, CINDY LONG, TIMOTHY APPLE, STEVE WHITE, LYN KNAPP, WILLIAM VASICEK, MICHAEL LANDON, LINDA CHARTRAND, MERLE LEMAIRE, MARY WEILAND, LAWRENCE JURLOWSKI, JOHN MONROE, JAMES PLATKO, JAMES BRASSEUR, DAN ABBE, DENZEL MARTIN, GAIL HAK, KEVIN STOKES, JAMES MCGUINNESS, RUSSELL KLEINHANS, JENNIFER HOUTRIDES, JEFFREY ESCKILSEN, ARTHUR KICKLAND, WILSON GUM, DIANA WILSON, RUTH FRANKLIN, TIMOTHY BELL, ALENE MCCOY, BHARATI SHARMA, BILL DEHAAN, ROBERT ORRYS, HOWARD LOGSDON, JAROD SCHALK, LEE SHELDON, ELMER LAPERE, WILLIAM PRECZEWSKI, LEONARD WILLIS, TIM HAKES, KATHY PARRENT, JOSEPH KOZLOWSKI, BARBARA MCLEAN, DAWN GLESNER, KEVIN GREEN, PHILLIP MAXWELL, HELEN JOHNSON, JANE DARBY, RITA KRAWIEC, TERRY THOMPSON, SIGNEY CASE, DAVID BURKHART, PAUL IDZIKOWSKI, JUDITH MARSH, BART JONES, SUGENDRINI PONNAMPALAM, ANN LAZZARO, DOUGLAS ARNOLD, WILLIAM DURAND, DINO VESPRINI, LANCE COOK, KELSEY FINNEY, JEFFREY GREEN, TRACY

SCHOLTZ, ASA MAY, JANET GUILLIFORD, MARY HUNTLEY, LYLE BINIECKI, MARK BURCH, ROBIN ODELL, PATRICIA PUNG, JOHN LUESING, ROBERT MATHIS, DENISE BOMAN, ROBERT HOFFMAN, BARBARA SCHOMER, LAWRENCE PIOTROWSKI, DEBORA MEYER, TODD MUNGER, EVELYN DARK, DONNA LEE ATHERTON, STEVEN PARKHURST, LARRY GRELL, LOREN WALDIE, PATRICIA LAWRENCE, FRANK HEAD, BRIAN DANKERT, MARIA URSUY, JAMES FORST, STEVEN MILLS, RONALD BOWMAN, KAREN SANDERS, KEITH POPOUR, DWAYNE DRYS, ROY CURLEY, GLORIA TAYLOR, RODNEY FROST, CHARLES WALKER, MARJORIE MCFARLANE, JACK KELLY, JANET STOIKE, VALERIE WALTERS, SHEILA CASE, CHRIS WAGNER, CHARLES BIRDEN, JAMES SIMON, ROBERT MCMANUS, BARBARA WARNER, CURT SEITZ, TIMOTHY PENNINGTON, PETRINA RICE, AMY SCHNEIDER, ROBERT BUNKER, SHARON PARKER, ROBERT MASON, BARBARA LOOMIS, KIMBERLY POHL, WAYNE MITCHELL, JAMES BRUBAKER, CAROL YOUNGBLOOD, ROBERT YOUNGBLOOD, EMILY SIMBECK, BRUCE RICH, DAVID ALEXANDER, EDITH MASON-MEAD, GORDON HUCKINS, LESLIE TRELFA, RICHARD WARE, KENNETH MADISON, ANDREA ZOMERFELD, DONNA SZYMANSKI, JILL COUCH, SANDRA HEWITT, RONALD SCHWENN, CYNTHIA PACKARD, SUSAN KLICH, PRICILLA COREY, MARK TRANCYGIER, JOHN J. FREHLING, RAYMOND DARABOS, JOHN E. FREHLING, BRIAN COONS, JAMES BLIMKA, HARRY NOWACKI, GREG PAXTON, RALPH BURKE, CHRIS TORBET, BETTY ATHEY, CHAD CHANDLER, JANET KNAPP, RUSSELL JINKS, RANDY ZDENEK, DIANE DYMCZYK, MICHELLE DOEDE, JENNA POST, CRAIG KULESZA, GORDON BIRKMEIER, PATRICIA BIRKMEIER, GARY NORTH, JOHN JUCIUS, CATHY SCHILINSKI, ROBERT FRANKS, TIM WESSON, JOHN MONTGOMERY, CHARLES STEFFEY,

SANDRA BURNHAM, CHRISTENE HILL, R.
DEAN COOPER, RUTH ANN BAZZANI, DAVID
CHARBONNEAU, YVONNE MARTIN,
ANTHONY PIWOWARSKI, IRENE
PIWOWARSKI, THOMAS STADLER, MARTIN
BONNER, SHAWN INGLES, MARK MARTIN,
and ARTHUR DUBAY,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

        Defendants-Appellants.

No. 359907
Court of Claims
LC No. 20-000232-MZ

---

DONALD TURSKEY, TERESA TURSKEY, ERIC
TURNQUIST, KURT STANLEY, JASON
PARSONS, TINA PARSONS, KATHLEEN
CHORBAGIAN, MARK CHORBAGIAN, JOSEPH
UHELSKI, BECKY UHELSKI, DUANE
WHITMAN, BRENDA WHITMAN, JEFFREY
KRIEBEL, BROOKE KRIEBEL, JAMES
RODGERS, MARY RODGERS, CHRIS MILLER,
TERRY MILLER, REX CLARK, and NANCY
CLARK,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

        Defendant-Appellant,

and

MARIO FUSCO and LUKE TRUMBLE,

        Defendants.

No. 359908
Court of Claims
LC No. 20-000233-MM

BOB BEAUCHAMP, DEBBIE BEAUCHAMP,
WILLIAM BOYD, GLENDA BOYD, JOYCE
BREWSTER, JEFFREY BRUSHABER, JENNIFER
BRUSHABER, SHARON CAMPBELL, PAUL
CLARK, MARK DOTY, BARBARA DOTY,
ELEANOR GURICH, THOMAS HERBER,
NATALIE HERBER, DOUG JANES, PAM JANES,
TRENTON JOSLIN, ASHLEY JOSLIN, MICHAEL
PETTYES, LISA PETTYES, GERALD
PSCHOLKA, SANDRA PSCHOLKA, CHARLES
REESE, JOYCE RELITZ, BRIAN TALKINGTON,
TINA TALKINGTON, JEFFREY TIMMONS, LISA
TIMMONS, ROBB WEBBER, ANITA WEBBER,
JOHN WILLING, ROBERT DALE, TINA DALE,
THEODORE YANKO, and NANCY YANKO,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

        Defendant-Appellant.

No. 359909
Court of Claims
LC No. 20-000235-MM

---

AFFILIATED FM INSURANCE COMPANY,
ALTMAN MANAGEMENT, LLC, AMERICAN
GUARANTEE & LIABILITY INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, CITIZENS INSURANCE COMPANY
OF AMERICA, CITIZENS INSURANCE
COMPANY OF MIDWEST, CONIFER
INSURANCE COMPANY, ESSENTIA
INSURANCE COMPANY, FACTORY MUTUAL
INSURANCE COMPANY, FARM BUREAU
GENERAL INSURANCE COMPANY OF
MICHIGAN, FLORIST MUTUAL INSURANCE
COMPANY HORTICA, HASTINGS MUTUAL
INSURANCE, and HOUSTON CASUALTY
COMPANY UK BRANCH SUBSCRIBING TO
UMR REF NO. B128417631W20, Subrogee of
DOLLAR GENERAL CORPORATION, and
INDEPENDENT SPECIALTY INSURANCE
COMPANY, Subrogee of ALTMAN
MANAGEMENT, LLC, and INDIAN HARBOR

INSURANCE COMPANY, INTERSTATE FIRE & CASUALTY COMPANY, Subrogee of ALTMAN MANAGEMENT, LLC, and LEXINGTON INSURANCE COMPANY, MEEMIC INSURANCE, NATIONAL FIRE & MARINE INSURANCE, PIONEER MUTUAL INSURANCE COMPANY, PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, TELEPHONE & DATA SYSTEMS, INC., TRISURA SPECIALTY INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. VPC-CN0000010-05, Subrogee of NICHOLAS CHAD, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP648136-2019, Subrogee of MATTHEW GEHREHKE, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP407517-2019, Subrogee of JOSEPH HARRIS, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP660734-2019, Subrogee of TIM HUVER, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP750302, Subrogee of LISA KABAT, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO NCIP823658, Subrogee of JAMES LYNCH and ASHLEY LYNCH, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP807996-2020, Subrogee of CHARLES MICHAEL, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP00631003, Subrogee of MEGAN MICHAELS and JACOB MICHAELS, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. 844682-2020, Subrogee of JODY NEIMAN, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP878669, Subrogee of LARRY PARSONS, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP303385-2020, Subrogee of DANIEL

REAUME, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP576330-2019, Subrogee of MARK SPRAGUE, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. NCIP616384, Subrogee of JASON THOMAS, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. DNAPF006484-00, Subrogee of TRI-CITY EQUITY GROUP, LLC,

        Plaintiffs-Appellees,

v

DEPARTMENT OF NATURAL RESOURCES and DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY,

        Defendants-Appellants,

and

ATTORNEY GENERAL,

        Defendant.

No.   359910
Court of Claims
LC No.   20-000236-MM

---

BRIAN BAILEY, KENDRICK BELCHER, JENNIFER BELCHER, STEPHEN BLOOD, JOYCE LONG, NATHAN BROOKS, KRISTEN BROOKS, WARD COMER, PATRICIA COMER TODD DENNIS, MARK GAHRY, YVONNE GAHRY, JOHN GRAPPIN, GLORIA GRAPIPN, SCOTT GRATOPP, DANNEILLE GRATOPP, SECOND LAKE MARINA, ROBERT GRATOPP, SCOTT GRATOPP, CARY GREZESZAK, TAMARA GREZESZAK, JOYCE GREZESZAK, SCOTT HADDON, ERIKA HADDON, MICHAEL JASINSKI, MARY JASINSKI, NANCY LASKEY, EARL LEWIS, RITA LEWIS, RANDY LONG, DIANE LONG, ROBERT LONG, BRENDA LONG, DARWIN MAGNUS, DIANE MAGNUS, GREGORY MULCAHY, COLLEEN MULCAHY, GORDON NICHOLS, KINDRA NICHOLS, JACQUELINE OWENS, LEONARD OZERAJTYS,

SHAWN OZERAJTYS, JOHN RAHN, MARY
BETH FERGUSON-RAHNM, TRINA REIF,
Beneficiary of the CLARK TRUST, COREY
ROBINSON, CHAD TOMS, Trustee of the TOMS
FAMILY TRUST, DAWN TOMS, DANIEL
TURLEY, AMY TURLEY, NICHOLAS
UNSWORTH, VANESSA UNSWORTH, SCOTT
WINTERLEE, TERRI WINTERLEE, MELISSA
DAWES, GEORGE WISKUP, and JULIE WISKUP,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

        Defendant-Appellant.

No. 359911
Court of Claims
LC No. 20-000237-MM

EDWARD BERKOBIEN, CAITLYN LAPLOW,
ARMANDO RAMOS, RANDY R. RICE, JAMES
ANTAL, AMY BLAKE, EUGENE BECKHAM,
MADELINE BERKOBIEN, CATERA
CAMPBELL, TIMOTHY CRAWFORD,
GERALYN DUST, JILL HOGENSON, KYNAN
FOERSTER, RACHEL GUENTENSBERGER,
MARC HILDERBRANDT, JILL HOGENSON,
JUSTIN LAPLOW, CHADWICK LAROEQUE,
MICHELLE OSTAHOWSKI, ARMANDO
RAMOS, WILLIAM CHARLES REESE, RANDY
R. RICE, NORMAN ROSENBROEK, NICOLE
ROUSSEAU, CHARLES SCHOENMEYER,
WALLY SLEEPER, KLAUS SOMMER, LAURA
SWETT, HENRY THOMPSON, ROBERT
TWEDDLE, LAWRENCE VERGA III, CINDY
VERONESI, KRISTA WALTZ, BETH
WOODCOCK, DAVID WOODWARD, and DAVID
ZAHN,

        Plaintiffs-Appellees,

v

No. 359912
Court of Claims

-12-

DEPARTMENT OF ENVIRONMENT, GREAT          LC No.   20-000239-MM
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

          Defendants-Appellants.

_____

ANDREA JAMROG,

          Plaintiff-Appellee,

v                                          No.   359913
                                           Court of Claims
DEPARTMENT OF ENVIRONMENT, GREAT           LC No.   20-000240-MZ
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

          Defendants-Appellants.

_____

MICHAEL ADAMS, THOMAS DECOE,
KATHERINE HOLLEY, JILL WISEMAN,
DARLENE ADOLPH, ROSARIO AGNELLO,
KELLY AIKEN, ERIC ALARIE, KIM AMBS,
FRANK ANDERA, PATRICIA ATHEY, KAREN
AVERY, MADELINE AYERS, REX BADDER,
RANDOLPH BAUMGARTER, KELLY BEARD,
COLLEEN BEAUDOING, LAURA BECKER,
JOHN BENCI, THOMAS JOHN BENDER,
CAROLYN BENKO, RENEE BERGER, DALE
BISCHER, STUART BLOOMFIELD, DAVID
BLUMLO, THOMAS BOEHM, RENITA
BONADIES, BRENT BONNER, CASEY BOOTH,
BARBARA BORN, PAUL BOURGEAU, DONALD
BOYER, DONALD BRADLEY, SCOTT BRADY,
JOHN BRANDON, DAVID BREASBOIS,
RHONDA BRECKON, CRAIG BREWSTER, SR.,
JAMES BRICAULT, DOROTHY BRISTER,
COLEEN BROOKS, JENNIFER BROWN, NANCY
BROWN, MARSHA BRUBAKER, MICHAEL
BRUNS, MALCOLM BRYANT, MICHAEL
BUDA, JENNIFER BURNS, JOSHUA BURNS,
LARRY BUTCHER, RUTH ANN BUTLER,
SHANNYN CALDWELL, ROBIN CAMPBELL,
CARLOS CAMPBELL, DIABENESE CAMPBELL,
RICHARD CAMPBELL, VIRGINIA CAMPBELL,

ROBIN CAMPBELL, RONNIE CARSON, MATTHEW CAY, JUDY CHASTAIN, CHRIST CHRISTODOLU, DONALD CIANEK, JOHN CIKALO, RODNEY CLARE, JEFFREY CLARK, RYAN CLARK, WILLIAM CLARK, TAMARA CLARK-MOORE, SHERRY CLEMONS, LINDA CLEVER, LARRY CLIPPER, LINDSAY COCHRAN, KRISTIE COCKING, CHARLES COLLEY, DREW COLLINS, DARIN CORBAT, CATHERINE COX, JUDITH COX, RUSSELL CRAIG, LINDA CRISWELL, CHARLES CUTCHER, SALOMEY DARABOS, PAULINE DAVIS, KELLY DAY, MICHELLE DECOE, ELLA DELDUCA, MARSHA DEMARS, VERA DICE, HAROLD DICKERSON, ARTHUR DIETRICH, GREGORY DOMAGALSKI, ROGER DOMINOWSKI, TRULY DOMINOWSKI, PATRICK DOUGLAS, SUZANNE DOWNEY, DONALD DRAYTON, ARTHUR DUBAY, ANTOINETTE DUNIKOWSKI, THOMAS DYMORA, JUDY EICHMAN, DAVID ENGWIS, PHILLIP ERWAY, CHARLES ERWELL, CATHY FARRAND, MICHILLE FEDERER, CHARLES FERGREUS, DIANE FEJEDELEM, GERTRUDE FERNETTE, MARCELLA FERRIGAN, TYLER FINNEY, RICHARD FIX, FLATS CONDOMINIUM CAMPGROUND, SANDRA FLATT, SUE FLATTERY, DANIEL FLUM, KATHLEEN FOGUS, KIM FOURNIER, GREGORY FOYE, TERESA FRIEDLE, JAMES FROST, SUE FRY, SCOTT FULLER, DANIEL GADWELL, RICHARD GAFT, LOIS GALLIMORE, DAVID GALLT, KEVIN GARTUNG, BARBARA GARZA, VERNON GEHRLS, JOEL GERENDASY, DAVID GERMAIN, FRANK GIANNATTASIO, JEFFREY GIBSON, SUSAN GOULETTE, NINA GRAHAM, KRISTY GRAPPIN, DONALD GRAVES, HAROLD GREBLO, JACOB GREEN, WINONDA GREEN, EARL B. GREGORY, PETER GREGORY, CHERYL GRIFFIN, PATTI GRUZIN, ELIZABETH HACKWORTH, SHANE HADOUS, JEFFREY HANH, AMY HAINES, KAREN HAMILTON, THOMAS HAMMOND, ROXANNE HARLESS, KIMBERLY HARTMAN, LANDRA HARTMAN, ELIZABETH HARTWICK, CINDY

HEDRICH, THOMAS HELDT, KENNETH HELM, CHERYL HILBRANDT, RONDALD HILBRANDT, ANN HILGENDORF, DOUGLAS HILL, GAIL HINKLEY, BRIAN HOCK, LISA HOFFERT, THOMAS HOHENSEE, THOMAS HOLLEY, RICHARD HOSFORD, BOBBIE HOSKINS, TABITHA HOSKINS, NORMA HOWE, DONNA HRYNEZUK, CASH HUBBARD, BARBARA HUCKINS, HOWARD HUGHES, CLYDE HULLETT, ROBERT HUNTOON, LANCE IRELAND, CHARLES IRELAND II, LYNN IRISH, KATHY JERRY, JOSEPH JESSELAITIS, RICHARD JODTS, BARBARA JOHNSON, JENNIFER JOHNSON, ROBERT JOHNSON, SYLVIA JORDAN, AGNES KADLEE, CAROL KAWECK, CYNTHIA KEHOE, KIMBERLY KELLOGG, MICHAEL J. KELLY, RUTH KENNEDY, PATRICK KENNEDY, KATHLEEN KENWORTHY, GREGORY KESSLER, FLOYD KILBREATH, MARY KINASZ, PATTI KING, CHRISTOPHER KINSMAN, NANCY KIRKBY, KARIN KLAWENDER, RANDY KLUMP, DOROTHY KOCSIS, NANCY KOENIG, MARK KOWALCZYK, CHARLES KRAEMER, ERIC KRAFT, CLARK KREUTZBERG, LOUIS KRICK, CINDY KROL, LONNIE KUBIK, WADE KUNISH, KIP KUSSRO, REBECCA KWATER, TIMOTHY LACROSS, BRUCE LAMB, SANDRA LANSING, JUSTIN LAPLOW, MESHELL LARSON, SUE LAUER, DEBORAH LAWLER, LINDA LECKRONE, CHRISTINE LEGACY, ROBERT LEIGEB, BONNIE LEITZ, LISA LEMIEUR, RONAN LER, ROBERT LEMER, KATHY LYNN LEVELY, KEVIN LIEBETREU, EDWARD LINCOLN, ANITA LOPEZ, JEANETTE LOVELESS, ERIC LURINS, MARY LYNCH, RICHARD LYONS, PAUL MADDEN, VALERIE MALKIN, DANIEL MALLOY, JOSEPH MANELIS, JAMES MANN, JOYCE MANSFIELD, KRISTINE MANWELL, MARGARET MASTERS-JUN, TAWSE MATTHES, MARY MATTHESS, VIOLET MCCREADIE, FREADA MCDANIELS, PEGGY MCDANIELS, AGNES MCDONALD, FLOYD MCDONALD, ROBERT MCDONALD, NORMAN MCGARRY, ROBERT MCGINNIS,

MARGO MCIVOR, MAC MCKELLAR, JOYCE MCLAUGHLIN, JUDY MERTES, RAYMOND MEYER, LISA MEYER, CRISTIAN MICLEA, DELBERT MIDDLETON, LINDA MIDDELSEN, JAMES LAMONT MILLER, CARLTON MILLS, BECKY MINNIS, CAROL MITCHELL, DAWN MOBLEY, SEAN MOBLEY, CHRISTOPHER MOHN, JORDAN MOORE, MARTHA MOORE, CHARLES MUIRHEAD, CHARLES MUIRHEAD II, HAROLD MURPHY, WILLIAM MURRAY, ALEXANDRA MUTER, DARYELL NATZEL, SALLY NAYLOR, JEAN NAYLORE, CHRISTINE NEILSON, PATRICK NIELSON, JAMES NEMETH, JAMES NEVEAU, JR., DWIGHT NEWPORT, KIMBERLY NICHOLLS, ERIC OBOYLE, CAROLYN OCHAB, MATTHEW OLSON, LUANNE OSTERGREN, JOYCE OSTRANDER, PENNY OWNES, JODY PAGEL, DANNY PARKINSON, DAVID PASEK, ANDREW PASSARIELLO, DALE PATENAUDE, SHERI PAWLOWSKI, BRIDGETT PETSNICK, WILLIAM PFLUEGER, RONALD PLATT, MARVIN PLOTZKA, NORMAN PLOTZKA, SUSAN POLITO, NICHOLAS POSUNIAK, SANDRA PREIMER, EUGENE PROSS, KEITH PROSS, NANCY QUEEN, PATRICIA RAMBO, MARK RAMER, LUANN RAMER, DANIEL REAUME, CHARLES REESE, SHAWN REILLY, AMANDA REINKE, MILFORD RICE, APRIL ROBINSON, SANDRA ROLANDS, DOROTHY ROSE, TERREL ROSS, VIRGINIA ROUSSEAU, CHRISTOPHER RUBIS, ANNETTE RUBY, STEPHEN RUPP, JOSEPH RYAN, CAROL RZENDZIAN, MARK SADEK, ROBIN SANBURN, BRAD SAUVE, ROBERT SCHERZER, MAUREEN SCHMIDT, LISA SCHMITTLING, MARK SCHMITZ, JENNY SCHMITZER, STEVEN SEDLAR, MARGARET SEE, CHARLENE SHEAR, DANIEL SHERIDAN, CARRY SHINKEL, RONALD SIZELAND, RAYMOND SLAVENS, WALLY SLEEPER, RICHARD SMITH, GAIL SMITH, RONALD SMITH, TIMOTHY SMITH, EDWARD SOMMERFIELD, MICHELLE SOWA, CYNTHIA SOWINSKI, JOANNE SPARKS, PATRICIA SPENCER, KENNETH SPITLER, CRYSTAL

STARKEY, JOHN STASA, RICHARD STASA, JAMES STECK, JAMES STICKLE, GRACE STINTON, RUTH STOINSKI, BETTY STRICKER, MARIA LISA STRUSSIONE, ROBERT STUPAR, BRIAN STURZA, STACY SUMMERS, EILEEN SURBROOK, KIRK SUTLIFF, MARIAN SUTTON, JAMES TANNER, KAREN DIANE TAYLOR, THOMAS TEER, PARTRICIA THEOBALD, BEATA THIERRY, DONNA THOMAS, AMY THOMAS, KELVIN THOMAS, MALERIE THOMASON, JAMES THUNBERG, JUDITH TIBURZI, DAVID TROMBLEY, DOROTHY TURRELL, DEBRA VANHORN, SHARON VANY, LAWRENCE VERGA III, JULIE VEZINIA, JOHN VINSON, AARON WAGNER, KURT WAGNER, PHILIP WALKER, ROY WALKER, KENNETH WEBER, MELISSA-RAE WELCH, DEBRA WHEATLEY, MARCIA WHITE, SUSANA WIATR, DAVID WILLIAMS, GAIL WILSON, MARK WILSON, ROBERT WISCHMEYER, CHARLES WISE, MONTY WISEMAN, TODD WITTBRODT, GLORIA WORSHAM, VERNON YASCOLT, DENNIS YIATRAS, and BONNIE ZAWISLAK,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY and DEPARTMENT OF NATURAL RESOURCES,

        Defendants-Appellants.

No. 359914
Court of Claims
LC No. 20-000241-MM

ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, ALLSTATE NEW JERSEY PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE TEXAS LLOYDS, and

ALLSTATE FIRE AND CASUALTY INSURANCE
COMPANY,

       Plaintiffs-Appellees,

v

DEPARTMENT OF NATURAL RESOURCES and
DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

       Defendants-Appellants,

and

ATTORNEY GENERAL and STATE OF
MICHIGAN,

       Defendants.

No. 359915
Court of Claims
LC No. 20-000245-MM

---

JOEL HALLIDAY, DEBBIE HALLIDAY, BRIAN
HENRY, LINDSEY HENRY, KENNETH WADE
HOOD, MACKENZIE KASTL, JESS KING,
MICHAEL KUBACKI, CYNTHIA KUBACKI,
SUZANNA MCARDLE, GREGORY MENARD,
LORI MENARD, and JONATHAN NEWPORT,

       Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

       Defendants-Appellants.

No. 359916
Court of Claims
LC No. 20-000257-MM

---

FRANKENMUTH MUTUAL INSURANCE
COMPANY, GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK, AMERICAN
BANKERS INSURANCE COMPANY OF
FLORIDA, AMERICAN SECURITY INSURANCE
COMPANY, LIBERTY MUTUAL INSURANCE
COMPANY, SAFECO INSURANCE COMPANY,

HISCOX SYNDICATES LIMITED,
PROGRESSIVE MICHIGAN INSURANCE
COMPANY, PROGRESSIVE MARATHON
INSURANCE COMPANY, WESTPORT
INSURANCE CORP, ALLIANZ GLOBAL RISKS
US INSURANCE COMPANY, and AMERICAN
STRATEGIC INSURANCE CORP,

        Plaintiffs-Appellees,

v

DEPARTMENT OF NATURAL RESOURCES and
DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

        Defendants-Appellants,

and

ATTORNEY GENERAL,

        Defendant.

No.  359917
Court of Claims
LC No.  20-000246-MM

---

STEVEN OARD, LORRAINE ROTTMAN,
AUGUSTINE SALAS, LAURA SWETT,
WILLIAM WEBER, SHARON WOODWARD,
JOHN YAKICH, and ROBERTA ZIMMERMAN,

        Plaintiffs-Appellees,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

        Defendants-Appellants.

No.  359918
Court of Claims
LC No.  20-000260-MM

---

DONNA ARNOLD, JOSEPH BALHORN,
CYNTHIA BALHORN, ANTHONY BAX, RICK
BISHOP, WILLIAM BRANDIMORE, and KAIR
COUGHLIN,

Plaintiffs-Appellees,

v                                                                    No. 359919
                                                                     Court of Claims
DEPARTMENT OF ENVIRONMENT, GREAT                                     LC No. 20-000262-MM
LAKES, AND ENERGY and DEPARTMENT OF
NATURAL RESOURCES,

                 Defendants-Appellants.

Before: GARRETT, P.J., and K. F. KELLY and HOOD, JJ.

GARRETT, P.J.

These consolidated appeals stem from the failure of the Edenville Dam in May 2020, which resulted in devastating flooding and property damage to nearby residents. Plaintiffs brought claims of inverse condemnation against state defendants for damaging their property without providing just compensation. Plaintiffs' allegations focus primarily on actions taken by the Department of Environment, Great Lakes, and Energy (EGLE) that contributed to the dam failure. Defendants moved for summary disposition under MCR 2.116(C)(7) by invoking governmental immunity, despite acknowledging that immunity did not apply to constitutional claims such as inverse condemnation. The Court of Claims instead reviewed defendants' motion under MCR 2.116(C)(8) because defendants' argument—that plaintiffs' allegations were inadequate to satisfy the elements of an inverse condemnation claim—sounded akin to a motion for failure to state a claim on which relief can be granted. Unlike motions for summary disposition reviewed under subrule (C)(7), motions evaluated under subrule (C)(8) consider whether the plaintiffs alleged a legally sufficient claim by looking to the pleadings alone and accepting their factual allegations as true. Confining its review to plaintiffs' complaints, the Court of Claims concluded that plaintiffs pleaded viable inverse condemnation actions and therefore denied summary disposition to defendants on those claims.[1]

On appeal, defendants challenge to the Court of Claims' decision is twofold. First, defendants contend that the Court of Claims erroneously applied the standards of MCR 2.116(C)(8) to review their motion for summary disposition. Properly reviewed, defendants assert, the Court of Claims should have considered hundreds of pages of publicly available documentary evidence that contradict plaintiffs' factual allegations. Applying well-settled precedent, we hold

---

[1] The Court of Claims' order denying summary disposition only listed EGLE and the Department of Natural Resources (DNR) as defendants, but a few complaints also stated claims against the Attorney General, the State of Michigan, and other government officials. We use "defendants" to refer collectively to all defendants named in plaintiffs' complaints. Because plaintiffs' allegations primarily relate to actions taken by EGLE, we will refer to particular defendants individually as necessary.

that the Court of Claims correctly evaluated defendants' motion for summary disposition under MCR 2.116(C)(8) and appropriately limited its analysis to a review of the pleadings. Second, defendants argue that, even confined to the pleadings, plaintiffs' allegations are insufficient to state a claim for inverse condemnation. Again, we disagree. Accepting plaintiffs' factual allegations as true, which we must at this stage, plaintiffs adequately alleged the elements of a viable inverse condemnation claim. We affirm.

## I. FACTUAL BACKGROUND

The parties dispute many key facts. But as we will discuss, our appellate posture is a review of defendants' motion for summary disposition under MCR 2.116(C)(8). Therefore, when reciting contested facts, we accept the allegations in plaintiffs' complaints as true and construe those allegations in plaintiffs' favor. See *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012).

## A. EDENVILLE DAM FAILURE

The Edenville Dam was built in 1924 to hold back water from the Tittabawassee and Tobacco Rivers. The dam formed Wixom Lake, crossing portions of Midland County and Gladwin County. Boyce Hydro Power, LLC (Boyce), a private company, purchased the Edenville Dam in 2004. Boyce acquired a license from the Federal Energy Regulatory Commission (FERC) to operate the dam to generate hydroelectric power.[2] Boyce had a long history of noncompliance with regulatory requests from FERC to upgrade the dam. Federal regulators warned Boyce that the dam was not structurally adequate and that its spillway capacity—"the maximum outflow flood which a dam can safely pass"—was inadequate in the event of a "Probable Maximum Flood" (PMF).[3] Fixing the dam, regulators told Boyce, was necessary "to protect life, limb, and property." After years of unaddressed regulatory violations, FERC revoked Boyce's federal license in September 2018.

Upon revocation, the Edenville Dam fell under the oversight of state agencies: EGLE and the Department of Natural Resources (DNR). Plaintiffs alleged that, within nine days of the license revocation, Michigan inspectors conducted a cursory inspection of the dam and determined that it was in fair structural condition. In January 2019, an entity known as the "Four Lakes Task Force"—having been delegated authority by Midland and Gladwin Counties—petitioned in circuit court for an order establishing a legal water level for Wixom Lake. The Midland Circuit Court granted the petition in mid-2019, setting the lake level at the levels previously required by FERC. Around this time, the Four Lakes Task Force began the process of acquiring the Edenville Dam

---

[2] FERC is an independent regulatory agency within the United States Department of Energy that, among other things, "[l]icenses and inspects private, municipal, and state hydroelectric projects." Federal Energy Regulatory Commission, *What FERC Does*, <https://www.ferc.gov/what-ferc-does> (accessed July 14, 2023).

[3] Plaintiffs described a PMF as "the flood that may be expected from the most severe combination of critical meteorologic and hydrologic conditions that is reasonably possible in the drainage basin under study."

from Boyce. According to plaintiffs, civil engineering reports financed by the State confirmed that the Edenville Dam lacked adequate spillway capacity and needed significant repairs to meet EGLE safety requirements.

In November 2019, EGLE rejected Boyce's request for a "drawdown"—a lowering of the lake level—purportedly out of concern about harm to aquatic life and other environmental impacts. Boyce lowered the lake level anyway, and EGLE threatened legal action against Boyce over the unapproved drawdown. Then in April 2020, EGLE issued a permit to Boyce to raise the lake water levels and, according to plaintiffs, conditioned the permit on Boyce maintaining high water levels without further drawdowns. Throughout its oversight of the dam, plaintiffs alleged that Michigan regulators knew about the dam's inadequate spillway, overall deterioration, and need for repairs. Despite these warnings, plaintiffs allege, the EGLE actively moved to prevent Boyce from drawing down the lake level, pressured Boyce to raise the lake level, and concealed the risks that the dam's condition presented.

On May 19, 2020, concerns about the Edenville Dam's inadequate spillway came to fruition. Amid heavy rainfall, the dam failed. Floodwaters moved downstream over Sanford Dam, which also failed.[4] Thousands of residents in nearby towns were forced to evacuate to seek safe shelter. The flooding caused extensive damage and destruction to homes and businesses in surrounding communities.

## B. PROCEDURAL HISTORY

The Edenville Dam failure prompted substantial litigation, much of which is not before us. Relevant here, various groups of plaintiffs[5] sued defendants in the Court of Claims.[6] Plaintiffs brought claims for inverse condemnation, alleging that the Edenville Dam's failure and subsequent damage to their properties constituted an unconstitutional taking by defendants. Plaintiffs alleged that defendants took affirmative actions that led to the dam's failure—including wrongfully certifying that the dam was in fair condition and capable of use, denying a drawdown permit to Boyce to lower lake water levels, and authorizing the water levels to be raised in spring 2020—all with full knowledge that the dam would fail from heavy rainfall and flooding. Plaintiffs also

---

[4] The focus of this appeal is on the failure of the Edenville Dam. Any mention of "the dam" therefore refers to the Edenville Dam.

[5] Plaintiffs are mainly a collection of individual property owners and businesses. Some plaintiffs are subrogated insurers who seek reimbursement from defendants for covering their insureds' claims.

[6] The Court of Claims is a statewide court of limited jurisdiction, situated within the Court of Appeals, that handles various civil actions filed against state agencies. See MCL 600.6419(1)(a). Appeals from the Court of Claims are treated as if the Court of Claims were a circuit court. MCL 600.6446(1).

alleged that, despite the dam being privately owned by Boyce, defendants' operational control over the dam constituted a public use.

Instead of filing an answer to the complaints, defendants moved for summary disposition under MCR 2.116(C)(7).[7] While acknowledging that an inverse condemnation claim was a constitutional claim and not subject to governmental immunity, defendants nevertheless contended that immunity applied because plaintiffs could not satisfy the elements of their inverse condemnation claims. Broadly, defendants argued that plaintiffs had not established that defendants took any affirmative actions or that those actions were directly aimed at plaintiffs' properties. Defendants claimed that plaintiffs' inverse condemnation claims rested on allegations that defendants failed to issue a permit, sufficiently regulate, or adequately supervise the Edenville Dam, which could not constitute affirmative actions under Michigan law. Defendants refuted several of plaintiffs' factual allegations and attached hundreds of pages of documentary evidence in support of their arguments.

Plaintiffs responded, arguing that defendants were not entitled to immunity from the inverse condemnation claims. Plaintiffs requested that the Court of Claims recast defendants' motion for summary disposition as one brought under MCR 2.116(C)(8) because defendants attacked the sufficiency of the pleadings. Under that subrule, plaintiffs argued that they adequately alleged the elements of their inverse condemnation claims, including that defendants took affirmative actions directly aimed at plaintiffs' properties.

The Court of Claims denied defendants' motion for summary disposition on plaintiffs' inverse condemnation claims.[8] The Court of Claims first rejected defendants' attempt to invoke MCR 2.116(C)(7) to dismiss the inverse condemnation claims because they were constitutional claims not subject to governmental immunity. Instead, because defendants argued that plaintiffs had not adequately pleaded their inverse condemnation claims, the Court of Claims evaluated defendants' motion under MCR 2.116(C)(8). Therefore, the Court of Claims declined to consider the documentary evidence offered by defendants, and looked only to the pleadings, accepting as true the allegations made by plaintiffs. From this posture, the Court of Claims concluded that plaintiffs sufficiently alleged affirmative actions taken by defendants that were aimed at plaintiffs' properties. These allegations centered on defendants' knowledge of the need for repairs at the Edenville Dam and their affirmative acts that were designed to pressure Boyce to increase the water levels in Wixom Lake. Defendants unsuccessfully moved for reconsideration.

---

[7] Defendants filed several motions for summary disposition before the cases were all consolidated below, raising nearly identical arguments about the inverse condemnation claims in each motion. Some plaintiffs filed suit after the motion briefing and evidently agreed that their claims would be governed by the Court of Claims' decision on summary disposition.

[8] The Court of Claims granted summary disposition to defendants on trespass claims advanced by some plaintiffs. The Court of Claims also expressly declined to review any claims on which defendants did not move for summary disposition. This appeal only involves the denial of summary disposition on plaintiffs' inverse condemnation claims.

After we dismissed defendants' claim of appeal by right on jurisdictional grounds,[9] defendants filed an application for leave to appeal. We granted defendants' application and consolidated the 25 cases now before us.[10]

## II. ANALYSIS

We begin with a procedural point. In its decision, the Court of Claims cited allegations from only five of the 25 complaints: those in Dockets 359895 (*Krieger, et al.*); 359896 (*Holley, et al.*); 359897 (*Forbes, et al.*); 359899 (*Swarthout, et al.*); and 359913 (*Jamrog*). The Court of Claims' opinion explained that while other complaints contained relevant allegations about defendants' conduct, the opinion used examples from the five complaints "for the sake of brevity." Defendants have followed the Court of Claims' example on appeal and relied exclusively on these five complaints in their briefing. At oral argument, counsel for both parties agreed that the five complaints chosen by the Court of Claims were fairly representative of plaintiffs' allegations as a whole. Under these extraordinary circumstances, we will also rely on these five complaints when discussing the plaintiffs' allegations.[11]

## A. APPLICABLE STANDARD OF REVIEW

As our Supreme Court has aptly noted, "[t]he standards governing summary disposition are cited so often and have become such a part of the fabric of our caselaw that the reader of judicial opinions is likely to skim ahead to the analysis." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "But this case reveals the dangers in doing so." *Id*. Resolution of this appeal turns in significant part on the proper court rule for reviewing defendants' motion for summary disposition. We review a trial court's decision on a motion for summary disposition, as well as the interpretation and application of the court rules, de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). That means we evaluate the legal issue independently and without deference to the court below. *Genesee Co Drain Comm'r v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

### 1. MCR 2.116(C)(7) OR MCR 2.116(C)(8)

Defendants argue that the Court of Claims erred by declining to review their motion for summary disposition under MCR 2.116(C)(7) and by instead evaluating their motion under the

---

[9] *Krieger v Dep't of Environment, Great Lakes, & Energy*, unpublished order of the Court of Appeals, entered November 8, 2021 (Docket No. 358076) (*Krieger I*).

[10] *Krieger v Dep't of Environment, Great Lakes, & Energy*, unpublished order of the Court of Appeals, entered June 10, 2022 (Docket No. 359895). For brevity, we note that substantively identical orders were entered in each of the 25 dockets.

[11] Assuming without deciding that the Court of Claims erred by failing to analyze each complaint individually, defendants (as the appellants) had the burden to demonstrate that a mistake was made. See *Redmond v Heller*, 332 Mich App 415, 435 n 9; 957 NW2d 357 (2020). Defendants have not raised this issue as a claim of error, and through their representations to this Court, have effectively conceded that they are not entitled to relief on this basis.

standards of MCR 2.116(C)(8). This distinction shapes the deference given to plaintiffs' factual allegations and the types of documents that a reviewing court may consider.

Under MCR 2.116(C)(7), a defendant may seek summary disposition on grounds that a plaintiff's claim is barred because of immunity granted by law. *Dextrom*, 287 Mich App at 428. When reviewing a motion under this subrule, we consider "all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Beals v Michigan*, 497 Mich 363, 370; 871 NW2d 5 (2015) (cleaned up). See also *Dextrom*, 287 Mich App at 428 ("[T]his Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them."). If a genuine issue of material fact exists after properly considering all the evidence, dismissal is inappropriate. *Id*. at 429. But "[i]f no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*.

Review of a motion for summary disposition under MCR 2.116(C)(8) is more limited. A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim. *Mays v Governor*, 506 Mich 157, 172-173; 954 NW2d 139 (2020) (opinion by BERNSTEIN, J.). "We accept all factual allegations in the complaint as true, *deciding the motion on the pleadings alone*." *Id*. at 173 (emphasis added). We also construe all well-pleaded factual allegations in a light most favorable to the nonmoving party. *Johnson*, 491 Mich at 435. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160.

The Court of Claims denied defendants' motion for summary disposition on plaintiffs' inverse condemnation claims. "Michigan recognizes the theory of inverse condemnation as a means of enforcing the constitutional ban on uncompensated takings of property." *Proctor v Saginaw Co Bd of Comm'rs*, 340 Mich App 1, 16 n 10; 985 NW2d 193 (2022) (cleaned up). See also Const 1963, art 10, § 2 (prohibiting the taking of private property for public use without just compensation). Although the state government is generally immune from tort liability, such immunity does not apply to inverse condemnation claims. See *Electro-Tech, Inc v HF Campbell Co*, 433 Mich 57, 91 n 38; 445 NW2d 61 (1989) ("Since the obligation to pay just compensation arises under the constitution and not in tort, the immunity doctrine does not insulate the government from liability."). As our Supreme Court explained in *Thom v State Hwy Comm'r*, 376 Mich 608, 628; 138 NW2d 322 (1965):

> To permit the State to assert the defense of governmental immunity in such circumstances would be utterly to vitiate the constitutional provision providing for just compensation for the taking of private property for public use, for it would mean that the owner of property alleged to have been taken without compensation would be left without judicial recourse.

Consistent with this precedent, the Court of Claims explained that, because plaintiffs alleged that defendants' actions "amounted to inverse condemnation and an uncompensated taking in violation of art 10, § 2" of the Michigan Constitution, governmental immunity simply did not apply. Therefore, the Court of Claims ruled that defendants' motion and claim of immunity under MCR 2.116(C)(7) lacked merit. Defendants' central argument, the Court of Claims noted, was

that plaintiffs did not adequately plead an inverse condemnation claim. This contention sounded akin to an argument that plaintiffs failed to state a claim upon which relief could be granted under MCR 2.116(C)(8). Thus, the Court of Claims held that it would evaluate defendants' motion for summary disposition under MCR 2.116(C)(8), and as such, declined to consider documentary evidence outside the pleadings.

On appeal, defendants concede that governmental immunity does not apply to properly pleaded inverse condemnation claims. Instead, defendants argue that plaintiffs' claims, while styled as inverse condemnation claims, are actually tort claims to which immunity applies. Therefore, defendants' theory follows, the Court of Claims should have analyzed their motion for summary disposition under MCR 2.116(C)(7) and dismissed plaintiffs' claims as barred by governmental immunity.

Briefly, plaintiffs contend that this Court has already ruled that the Court of Claims properly analyzed defendants' motion for summary disposition under MCR 2.116(C)(8), and therefore, the law-of-the-case doctrine compels us to follow that decision. Under that doctrine, "if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021) (cleaned up). But importantly, the law-of-the-case doctrine applies only when issues are "*actually decided*, either implicitly or explicitly, in the prior appeal," and "does not apply to claims that were not decided on the merits." *Id*. at 287 (cleaned up).

In support of their position, plaintiffs stress this Court's prior dismissal of defendants' claim of appeal by right in which this Court stated:

> As the trial court recognized, the gravamen of defendants' motion for summary disposition with regard to plaintiffs' inverse condemnation claims was not a claim of immunity from such constitutional claims but rather an assertion that plaintiffs did not adequately plead the inverse condemnation claims. *Accordingly, in relevant part, the trial court's order constitutes an order denying a motion for summary disposition under MCR 2.116(C)(8) premised on failure to state a claim, not an order denying governmental immunity under MCR 2.116(C)(7).* See *Blair v Checker Cab Co*, 219 Mich App 667, 670-671; 558 NW2d 439 (1996) (trial court properly considered motion for summary disposition under appropriate subrule despite motion being framed under another subrule). [*Krieger I*, unpub order at 2 (emphasis added).]

Because this order involved a jurisdictional question about whether defendants had an appeal by right from a decision of the Court of Claims,[12] the order did not actually decide the merits of whether the Court of Claims properly reviewed defendants' motion for summary disposition under

---

[12] Generally, this Court has jurisdiction of an appeal of right from a "final order" of the trial court, MCR 7.203(A)(1), which includes "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7)," MCR 7.202(6)(a)(*v*).

MCR 2.116(C)(8). See *Rott*, 508 Mich at 287. The law-of-the-case doctrine therefore does not apply, and we turn to our de novo review of the issue.

As discussed, the normal rules of governmental immunity do not apply to inverse condemnation claims because such claims are constitutional. *Electro-Tech, Inc*, 433 Mich at 91 n 38. It logically follows, therefore, that MCR 2.116(C)(7) is an inappropriate vehicle to attack a plaintiff's inverse condemnation claim because immunity by law is not granted for such claims. Moreover, as the Court of Claims noted, defendants' position sounds as one attacking the legal sufficiency of plaintiffs' claims, making MCR 2.116(C)(8) the proper basis under which to grant or deny a motion for summary disposition. "[W]here a party brings a summary disposition motion under the wrong subrule, the trial court may proceed under the appropriate subrule as long as neither party is misled." *Blair v Checker Cab Co*, 219 Mich App 667, 670-671; 558 NW2d 439 (1996). The Court of Claims correctly determined that the appropriate subrule for reviewing defendants' motion was MCR 2.116(C)(8).

Defendants claim several precedents from this Court have "endorsed the use of MCR 2.116(C)(7) to attack inverse condemnation claims." The cited cases tell a different story. Defendants first point to this Court's decision in *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537; 688 NW2d 550 (2004). There, the plaintiffs brought trespass-nuisance and inverse condemnation claims against the DNR after a fire at a government-owned, abandoned property damaged the plaintiffs' neighboring home. *Id*. at 539-540. In relevant part, the DNR moved for summary disposition under MCR 2.116(C)(7) and (C)(8), and the trial court granted its motion. *Id*. at 540. The parties agreed that the plaintiffs' trespass-nuisance claim was barred by governmental immunity. *Id*. On the inverse condemnation claim, the trial court concluded that the "plaintiffs had not alleged a 'taking' of property that required just compensation." *Id*. We agreed, holding that the plaintiffs did not allege that the defendant took affirmative actions directed at their properties and thus " 'failed to state a claim on which relief can be granted.' " *Id*. at 550, quoting MCR 2.116(C)(8). By expressly relying on MCR 2.116(C)(8) to affirm the dismissal of the plaintiffs' inverse condemnation claim, *Hinojosa* did not endorse defendants' proposal to attack an inverse condemnation claim under MCR 2.116(C)(7). If anything, the decision *supports* the Court of Claims' conclusion that defendants' motion should be analyzed under MCR 2.116(C)(8).

Defendants' reliance on *Attorney General v Ankersen*, 148 Mich App 524; 385 NW2d 658 (1986), is equally unpersuasive. *Ankersen* did not once reference summary disposition or the proper standard for reviewing such a motion under MCR 2.116(C). In that case, the counterplaintiffs brought an inverse condemnation claim based on the state's "granting of licenses and subsequent failures to supervise and regulate . . . [waste] disposal operations," which allegedly decreased the value of the counterplaintiffs' property. *Id*. at 560-561. Although the trial court "made no ruling concerning whether counterplaintiffs' property was the subject of inverse condemnation," we held on appeal that the inverse condemnation claim failed as a matter of law. *Id*. at 561. Nowhere did *Ankersen* suggest that governmental immunity applied to dismiss the inverse condemnation claim. *Ankersen* simply has no bearing on defendants' argument.

Finally, defendants highlight *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264; 769 NW2d 234 (2009), but it too offers little support. There, the plaintiff alleged an inverse condemnation claim against the city for failure to prevent flooding

-27-

to the Frolings' property. *Id*. at 273. The city moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), and the trial court granted the motion. *Id*. at 274. This Court's opinion did not specify under which subrule the trial court granted summary disposition. We affirmed the dismissal of the plaintiff's inverse condemnation claim, holding that the claim failed because the plaintiff had "not alleged any affirmative action by the city directly aimed at the Frolings' property." *Id*. at 296. Although we again did not specify which subrule of summary disposition applied, the failure to allege an element of an inverse condemnation claim tracks with the failure to state a claim under MCR 2.116(C)(8). Thus, *Marilyn Froling Revocable Living Trust* appears to cut against plaintiffs' argument, and at best, offers no support. In sum, our precedents have not endorsed defendants' position to challenge an inverse condemnation claim under MCR 2.116(C)(7).

For these reasons, the Court of Claims did not err by rejecting defendants' unfounded attempt to invoke the standards of MCR 2.116(C)(7) and by analyzing defendants' motion under MCR 2.116(C)(8).

## 2. DOCUMENTS REFERENCED IN THE COMPLAINTS

Next, defendants contend that, even reviewing their motion under subrule (C)(8), the Court of Claims had to consider documentary evidence "referenced" by plaintiffs in their pleadings, such as FERC reports, e-mails, court documents, and state officials' statements. In support, defendants rely on MCR 2.113(C)(2), which provides that "[a]n attachment or reference to an attachment under subrule (C)(1)(a) or (b) is a part of the pleading for all purposes." Subrule (C)(1)(a) and (b), in turn, provide:

> (1) If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading and labeled according to standards established by the State Court Administrative Office unless the instrument is

> (a) a matter of public record in the county in which the action is commenced and its location in the record is stated in the pleading;

> (b) in the possession of the adverse party and the pleading so states[.] [MCR 2.113(C).]

In *El-Khalil*, our Supreme Court explored the interplay between MCR 2.113(C) and MCR 2.116(C)(8). The *El-Khalil* trial court, in reviewing the defendants' motion for summary disposition under MCR 2.116(C)(8), considered e-mails that were attached to the plaintiff's complaint. *El-Khalil*, 504 Mich at 163. Our Supreme Court agreed that the trial court could consider these e-mails because they were part of the pleadings under MCR 2.113(C). *Id*. But the Court made a critical clarification about materials attached to a complaint:

> The trial court's error was not in considering the e-mails as part of the pleadings; the trial court erred by considering the content of the e-mails *as substantive evidence* sufficient to dismiss plaintiff's claim under MCR 2.116(C)(8). [*Id*. (emphasis added).]

In other words, even if a party attaches materials to its complaint that become part of the pleadings, doing so does not automatically permit consideration of those materials as substantive evidence.

In *El-Khalil*, the e-mails properly considered by the trial court were explicitly *attached* by the plaintiff to his complaint. *Id*. The same cannot be said here. Although evidence may have been referenced by plaintiffs, it was not *attached* to their complaint. With limited exception, only an "attachment" to the complaint is considered part of the pleadings. See MCR 2.113(C)(2). The exception—that a "reference to an attachment under subrule (C)(1)(a) or (b) is a part of the pleading for all purposes"—is inapplicable here. Subrule (C)(1)(a) and (b) apply only when a "claim or defense is based on a written instrument," but the party need not attach the instrument to the pleading. Plaintiffs' inverse condemnation claims are not based on a written instrument, such as a contract. See *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019) ("[W]hen an action is premised on a written contract, the contract generally must be attached to the complaint and thus becomes part of the pleadings."). But even assuming the Court of Claims should have considered the documentary evidence referenced in the complaints, *El-Khalil* instructs that this evidence should not be considered as "*substantive evidence* sufficient to dismiss plaintiff[s'] claim[s] under MCR 2.116(C)(8)." *El-Khalil*, 504 Mich at 163 (emphasis added). Defendants urge us to do the opposite—consider the referenced documents as substantive evidence that contradicts plaintiffs' factual allegations. Thus, in several respects, defendants' position lacks merit.

Defendants also contend that "Michigan courts are not required to assume the truth of an allegation that contradicts the public record relied on for the allegation just because the allegation is in a complaint." We have never adopted that proposition. In *El-Khalil*, for instance, our Supreme Court once again "emphasize[d] that a motion for summary disposition under MCR 2.116(C)(8) must be decided on the pleadings alone and that all factual allegations must be taken as true." *Id*. at 155. Defendants reference federal caselaw interpreting the federal equivalent of MCR 2.116(C)(8) in an effort to avoid the standard of review compelled by our precedents. Not only does federal caselaw lack precedential value on matters involving the proper interpretation of Michigan court rules, see *Bienenstock & Assoc, Inc v Lowry*, 314 Mich App 508, 515; 887 NW2d 237 (2016), but the federal cases cited by defendants are factually distinguishable.[13] Most importantly, though, the rules from these federal cases that defendants seek to apply depart from our binding precedent.

---

[13] Defendants cite *Commercial Money Ctr, Inc v Illinois Union Ins Co*, 508 F3d 327, 335-336 (CA 6, 2007), but that case involved an insurance policy and various documents related to it, which made such documents "integral to the claims." Defendants further rely on *Bailey v Ann Arbor*, 860 F3d 382, 387 (CA 6, 2017), for the language, "If [the plaintiff's] pleadings internally contradict verifiable facts central to his claims, that makes his allegations implausible." In that case, the United States Court of Appeals for the Sixth Circuit ruled that it was proper to consider public video of a robbery that contradicted the plaintiff's allegations. *Id*. at 386-387. But *Bailey* involved a motion to dismiss on the basis of qualified immunity, *id*. at 385, which is more analogous to MCR 2.116(C)(7).

### 3. JUDICIAL NOTICE

Finally, defendants suggest that the Court of Claims should have taken judicial notice of publicly available evidence that was outside the pleadings. A court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b). This authority includes taking judicial notice of public records. See *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015). "Judicial notice may be taken at any stage of the proceeding." MRE 201(e).

Defendants cite no authority to support their claim that a trial court, or this Court, should take judicial notice of hundreds of pages of publicly available documents when deciding a motion under MCR 2.116(C)(8). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (cleaned up). Defendants merely cite *Ponte v Ponte Estate*, unpublished per curiam opinion of the Court of Appeals, issued April 24, 2012 (Docket No. 300789), p 2 n 1, a case where the trial court took judicial notice of a prior judgment of divorce that occurred in the same jurisdiction and this Court's decision on appeal from that judgment. Nothing about *Ponte* resembles this case or defendants' interpretation that a court may take judicial notice of evidence outside the pleadings simply because the evidence may be publicly available. Exercising judicial notice over a sweeping amount of documentary evidence would conflict with the otherwise well-established standard of MCR 2.116(C)(8) that explicitly *limits* the court to consideration of the pleadings. See *Mays*, 506 Mich at 173. Not only that, but it is debatable whether exercising judicial notice would be appropriate under these circumstances when the parties vigorously dispute how to interpret the evidence. Defendants do not identify which facts in the publicly available evidence are "not subject to reasonable dispute," and thus appropriate for taking judicial notice. See MRE 201(b). For these reasons, defendants' judicial notice argument lacks merit.

Defendants' position on the applicable standard of review is untenable. First, defendants improperly invoked MCR 2.116(C)(7) to dismiss plaintiffs' constitutional claims. Second, as a fallback position, defendants argue for an interpretation of MCR 2.116(C)(8) that would allow a reviewing court to consider documentary evidence that contradicts the factual allegations in the complaint. But that is a veiled attempt to obtain review under MCR 2.116(C)(7) by a different name. See *Beals*, 497 Mich at 370. In sum, the Court of Claims did not err by reviewing defendants' motion under MCR 2.116(C)(8) and limiting its analysis to the pleadings.

### B. ADEQUACY OF INVERSE CONDEMNATION CLAIMS

Defendants focus their remaining challenge on the viability of plaintiffs' inverse condemnation claims. Defendants argue that these claims are legally defective in two respects: (1) defendants did not take affirmative actions directly aimed at plaintiffs' properties and (2) plaintiffs' property was not put to a public use. Before turning to these arguments, we begin with the legal background.

## 1.  LEGAL BACKGROUND

The United States and Michigan Constitutions prohibit the taking of private property for public use without just compensation.  US Const, Am V; Const 1963, art 10, § 2.[14]  As noted, "Michigan recognizes the theory of inverse condemnation as a means of enforcing the constitutional ban on uncompensated takings of property."  *Proctor*, 340 Mich App at 16 n 10 (cleaned up).  Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency."  *Mays*, 506 Mich at 173 (cleaned up).  As alleged in this case, "[i]nverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.' "  *Merkur Steel Supply Inc v Detroit*, 261 Mich App 116, 125; 680 NW2d 485 (2004).  For instance, "[i]t is well settled that a governmental actor may cause a taking of private property by flooding the property or diverting excess surface water onto the property."  *Wiggins v City of Burton*, 291 Mich App 532, 572; 805 NW2d 517 (2011).  "Generally, a plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property."[15]  *Blue Harvest, Inc v Dep't of Transp*, 288 Mich App 267, 277; 792 NW2d 798 (2010). See also *Charles Murphy, MD, PC v Detroit*, 201 Mich App 54, 56; 506 NW2d 5 (1993) ("While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property.").

## 2.  AFFIRMATIVE ACTIONS DIRECTED AT PLAINTIFFS' PROPERTY

Defendants argue that they did not abuse their power by taking affirmative actions directed at plaintiffs' properties.

To understand what allegations are sufficient to plead affirmative actions directly aimed at plaintiffs' property, it helps to understand what allegations are not.  Nearly 40 years ago, we held that "the state's alleged misfeasance in licensing and supervising [a waste disposal] operation [did] not constitute affirmative actions directly aimed at the [counterplaintiffs'] property."  *Ankersen*, 148 Mich App at 562 (quotation marks omitted).  That case involved a lawsuit against the operators of a waste disposal business that sought the abatement of a fire hazard caused by the improper storage of hazardous industrial waste.  *Id*. at 531-532.  A countercomplaint alleged that the state counterdefendants contributed to the creation of the nuisance when they granted licenses to the business and failed to regulate the waste disposal operations, and that their actions amounted to an

---

[14] Plaintiffs bring their inverse condemnation claims solely under the Michigan Constitution.

[15] Although defendants challenged the substantial cause element on summary disposition, they do not renew that argument on appeal.

uncompensated taking. *Id*. at 532, 560-561. We rejected this counterclaim, holding that the alleged "inaction and omissions by the state" could not sustain a takings claim. *Id*. at 562.[16]

We applied the holding from *Ankersen* directly to *Hinojosa*. There, the legal issue was whether Michigan's takings clause "require[d] the state to justly compensate neighboring property owners for damage caused by a fire that spread from an abandoned house after the state acquired it through tax delinquency proceedings." *Hinojosa*, 263 Mich App at 538. Citing *Ankersen*, 148 Mich App at 561-562, we held that the plaintiffs failed to allege that the state took affirmative action toward their properties. *Id*. "At most, [the state] failed to abate a fire-hazard nuisance," a similar type of allegation to the one that *Ankersen* found insufficient to sustain an inverse condemnation claim. *Id*.

More recent cases have dealt with the viability of inverse condemnation claims premised on government-induced flooding. In *Marilyn Froling Revocable Living Trust*, 283 Mich App at 296, the plaintiffs argued that the city took their property for public use when the city "refused to construct a drainage system to cure their private water problems" and approved their neighbors' construction plans that contributed to flooding on the plaintiffs' property. We rejected this inverse condemnation claim, holding that the plaintiffs had alleged no affirmative actions taken by the city that were directly aimed at the plaintiffs' property. *Id*. Finally, in *Wiggins*, 291 Mich App at 538, 572, we held that the installation of drains on neighboring properties that were then connected to a storm-retention easement on the plaintiffs' property was an affirmative action by the city directly aimed at the plaintiffs' property. But after the city transferred ownership of the drains to the private property owners, "any material increase in the flow of water through the drain" could not confer inverse condemnation liability. *Id*. at 572-573.

In this case, plaintiffs alleged that defendants knew about the Edenville Dam's inability to withstand significant rainfall because of insufficient spillway capacity and knew that the dam's poor conditions posed a danger to the surrounding area and properties. Plaintiffs also alleged that defendants actively prevented efforts to repair the dam and threatened enforcement actions if the water levels were drawn down. Finally, plaintiffs claimed that defendants acted to conceal the risks posed by the dam and raise the lake levels to dangerous levels because it was more concerned with protecting environmental conditions in the lake. Accepting these allegations as true, plaintiffs sufficiently pleaded affirmative actions taken by defendants that were aimed directly at plaintiffs' properties. Plaintiffs' allegations demonstrate more than mere regulatory actions, such as issuing or denying a permit, *Ankersen*, 148 Mich App at 561-562, or failing to abate a nuisance, *Hinojosa*, 263 Mich App at 538. Rather, plaintiffs' allegations show active steps by defendants to authorize higher lake levels and to conceal critical information about the risk that the dam's condition posed to plaintiffs' specific properties in the surrounding area. Put differently, plaintiffs alleged that defendants' affirmative actions "set into motion the destructive forces" that caused the dam failure

---

[16] Because *Ankersen* was decided in 1984, its rule of law is not strictly binding precedent. See MCR 7.215(J)(1) (noting that a panel of this Court must follow published decisions issued by this Court on or after November 1, 1990). Still, pre-November 1, 1990 published opinions are regarded as precedent and entitled to deference if not disputed by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

and the damage to plaintiffs' properties that were in the direct line of harm. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 191; 521 NW2d 499 (1994).

Our Supreme Court's recent decision in *Mays*, which involved the Flint water crisis, is highly instructive. Just as here, the *Mays* Court analyzed whether the plaintiffs adequately pleaded inverse condemnation to overcome a motion for summary disposition under MCR 2.116(C)(8). *Mays*, 506 Mich at 172-180. The plaintiffs in *Mays* alleged damages arising from the defendants servicing their property with toxic water from the Flint River. *Id*. at 170-171. The Court held that the plaintiffs' allegations, taken as true, were sufficient to state an inverse condemnation claim on which relief could be granted. *Id*. at 179. Most relevant here, the Court rejected the defendants' position that the plaintiffs had not sufficiently alleged affirmative actions by the defendants that were directed at the plaintiffs' properties. *Id*. at 174-175. The Court explained:

> Plaintiffs allege that defendants committed an affirmative act directed at their property when the state defendants authorized the city defendants to use the Flint River as an interim water source while both sets of defendants knew that using the river could result in harm to property. Defendants then allegedly concealed or misrepresented data and made false statements about the safety of the river water in an attempt to downplay the risk of its use and consumption. The state defendants argue that if there were an affirmative act that was directed at the plaintiffs' property, it was the city defendants who effectuated the act, not the state defendants. While discovery may bear evidence that supports this conclusion, at this stage of proceedings, we must accept all of plaintiffs' allegations as true. See MCR 2.116(C)(8); *El-Khalil*, 504 Mich at 160. If true, plaintiffs' allegations are sufficient to conclude that the state defendants abused their powers and took affirmative actions directly aimed at plaintiffs' property. [*Id*. at 175.][17]

In this case, the Court of Claims discussed and analogized *Mays*, explaining that "just like in *Mays*, plaintiffs have alleged that defendant[s] committed an affirmative act aimed at their properties when defendant[s] required Boyce to raise water levels at Wixom Lake in the spring of 2020 and/or to keep the water levels high." The Court of Claims reasoned that plaintiffs' allegations that "defendant[s] concealed or obfuscated the risks at the time" were "similar to the allegations in *Mays* that the defendants committed an affirmative act by authorizing the use of the Flint River as a drinking water source despite knowing of the risks, while at the same time concealing those risks." We agree with the Court of Claims and find *Mays* particularly analogous in two respects.

First, *Mays* held that allegations that the state defendants "authorized" the city defendants to switch the water source for Flint residents despite knowledge of its risk was an affirmative act directed at the plaintiff's properties. *Mays*, 506 Mich at 175. In this case, defendants insist that any affirmative actions leading to the dam failure were taken by Boyce, and thus plaintiffs have

---

[17] A majority of the Court agreed that the plaintiffs sufficiently stated a claim for inverse condemnation and agreed with the lead opinion's reasoning on that point. *Mays*, 506 Mich at 172 n 5 (opinion by BERNSTEIN, J.); *id*. at 224, 224 n 1 (VIVIANO, J., concurring in part and dissenting in part).

not alleged affirmative actions taken by defendants themselves. But the authorization of the water source switch in *Mays* is akin to plaintiffs' allegations in this case that defendants authorized Boyce to raise its water levels weeks before the dam failure. In both cases, the plaintiffs alleged that the state defendants authorized another entity to take actions directly aimed at the plaintiffs' properties. Consistent with *Mays*, the allegations that defendants authorized Boyce to raise water levels despite knowledge of the dam's risk of failure are sufficiently pleaded affirmative actions.

Second, *Mays* emphasized allegations that the state defendants concealed data and made false public statements about the safety of the drinking water from the Flint River. *Mays*, 506 Mich at 175. Similarly, plaintiffs here allege that EGLE engaged in a "long pattern of misleading statements, dating back to 2018, designed to conceal and obscure the dangerous condition of the dam." For instance, plaintiffs allege that, after conducting a cursory inspection of the Edenville Dam in 2018, EGLE reported that the dam was structurally sound when it was not. As other evidence of concealment, plaintiffs also claim that a state agency spokesperson stated after the dam failure that EGLE had strong concerns about the dam's inadequate spillway capacity. Together, plaintiffs' allegations, like in *Mays*, are enough to conclude that defendants took affirmative actions directly aimed at plaintiffs' properties.

### 3. PUBLIC USE

Defendants also argue that plaintiffs' inverse condemnation claims fail because defendants did not put plaintiffs' property to a public use.[18]

Traditionally, the question of "public use" under Article 10, § 2 of the Michigan Constitution arises when the government seeks to use its power of eminent domain to take private property. Outside of this context, Michigan courts have not squarely addressed when affirmative actions taken by the state that have downstream effects aimed at private properties constitute a taking for "public use." Indeed, most inverse condemnation cases, including ones involving government-induced flooding, mention public use only in passing. See, e.g., *Wiggins*, 291 Mich App at 571; *Marilyn Froling Revocable Trust*, 283 Mich App at 296. *Ankersen* briefly discussed what constitutes a public use, holding that "the granting of a license to a private citizen or a private corporation for the purpose of allowing that person or corporation to conduct a private business cannot be regarded as a taking of private property by the government for public use." *Ankersen*, 148 Mich App at 561. The Court reasoned that "the issuance of a license does not in any way grant the public a right of use in the property." *Id.* at 562. But *Ankersen* vastly oversimplified the analysis. Article 10, § 2 of the Michigan Constitution does not merely ask whether the public has

---

[18] Some plaintiffs contend that defendants did not preserve this argument below. While the public use argument was not the focus of defendants' motions for summary disposition, at least one of their motions expressly challenged plaintiffs' allegations that EGLE exercised such control over the Edenville Dam so as to put it to a public use. Once an issue is raised below, "a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). Therefore, we consider this issue preserved.

a "right of use" in private property taken by the government. See *Wayne Co v Hathcock*, 471 Mich 445, 476; 684 NW2d 765 (2004).

In *Hathcock*, 471 Mich at 468-476, decided twenty years after *Ankersen*, our Supreme Court comprehensively analyzed what "public use" meant to the drafters of Michigan's 1963 Constitution. The Court explained that the "public use" requirement was a limitation on the state's ability to exercise its power of eminent domain. *Id*. at 472. But "[w]hen our Constitution was ratified in 1963, it was well-established in this Court's eminent domain jurisprudence that the constitutional 'public use' requirement was not an absolute bar against the transfer of condemned property to private entities." *Id*. The unstated but necessary corollary to the "public use" requirement is that the state is prohibited from "transferring condemned property to private entities for a *private* use." *Id*. Ultimately, our Supreme Court enumerated three types of circumstances where the transfer of condemned property to a private party is for a public use: "(1) where public necessity of the extreme sort requires collective action; (2) where the property remains subject to public oversight after transfer to a private entity; and (3) where the property is selected because of facts of independent public significance, rather than the interests of the private entity to which the property is eventually transferred." *Id*. at 476 (cleaned up). In this third circumstance, we look at whether the "act of condemnation *itself*" was a public use, "rather than the use to which the condemned land eventually would be put." *Id*. at 475-476. While this case arises from a different context than *Hathcock*, we find *Hathcock*'s reasoning on the meaning of "public use" in the Michigan Constitution instructive for deciding when the taking of private property that results from government-induced flooding is for a public use.

In this case, plaintiffs alleged that defendants exercised control over the Edenville Dam so much so that their use of the dam constituted a public use. Although privately-owned by Boyce, the dam was "subject to public oversight" by defendants. See *id*. at 476. The "act of condemnation" by defendants was the alleged affirmative actions taken by defendants to keep lake water levels high and conceal risks, contributing to the dam failure and the damage to plaintiffs' properties. Analogizing to *Hathcock*, the relevant question is whether defendants took plaintiffs' property by controlling the operation of the dam for a public use, not whether plaintiffs' property—once taken—would be put to a public use. See *id*. at 475-476. Plaintiffs alleged that defendants pressured Boyce to keep water levels high to protect aquatic life, prioritizing that interest at the expense of the safety of people and property. Accepting these allegations as true, they suggest that defendants, through their operational control of the dam, put the dam to a public use in their pursuit of environmental protection. Therefore, plaintiffs have sufficiently pleaded that defendants' alleged taking of their private property constituted a public use for which plaintiff are entitled to just compensation. While discovery may reveal facts contradicting these allegations, our role now is to accept these allegations as true and determine whether they state a viable claim of inverse condemnation. See *Mays*, 506 Mich at 175. At this stage, plaintiffs' claim is not "so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160.

Furthermore, defendants broadly argue that an inverse condemnation claim cannot survive when it rests on allegations that a private entity's operation of its private property resulted in damages. Defendants cite several cases for the proposition that "public use" can only arise from government actions on government projects. We decline to accept defendants' implicit suggestion to hold, in this context, and as a matter of law, that an inverse condemnation case can never be

-35-

sustained when the alleged damages arise from a privately owned dam. "Flooding cases, like other takings cases, should be assessed with reference to the particular circumstances of each case, and not by resorting to blanket exclusionary rules." *Arkansas Game & Fish Comm v United States*, 568 US 23, 37; 133 S Ct 511; 184 L Ed 2d 417 (2012) (cleaned up). The fact that most previous inverse condemnation cases in Michigan have involved government projects is unsurprising.[19] Because an inverse condemnation claim must be brought against the government, see *Wiggins*, 291 Mich App at 573, proving sufficient state action will often be easier when the government unilaterally owned and operated a dam. But that does not mean that, when allegations are made that the government—acting along with a privately owned dam operator—took affirmative steps that caused the dam to fail and damaged downstream property owners, Michigan's takings clause provides no remedy. See *Fritz v Washoe Co*, 132 Nev 580, 584; 376 P3d 794 (2016) ("When a private party and a government entity act in concert, government responsibility for any resulting damage to other private property may be established by demonstrating that the government entity was substantially involved in the development of private lands for public use which unreasonably injured the property of others.") (cleaned up).

Defendants misconstrue language from *Wiggins* to conclude that water flowing through a privately owned dam can never provide the basis for an inverse condemnation claim. In *Wiggins*, 291 Mich App at 536-538, the city constructed and installed drains on two properties abutting the plaintiffs' property in order to address a problem with the flow of surface water. Before completion of the project, the neighboring property owners signed documents stating that, when the city completed the project, the drains would " 'belong solely to the [property owners] and [would] be the [property owners'] responsibility to maintain/repair.' " *Id*. at 537. Ultimately, the plaintiffs alleged that the new drainage system redirected water from their neighbors' properties onto their own property, resulted in damages that constituted an uncompensated taking. *Id*. at 538. In evaluating the plaintiffs' inverse condemnation claims, we grouped the allegations in two buckets: the installation of the drain itself, and the subsequent increase in the flow of surface water through the drain onto the plaintiffs' property. *Id*. at 572-573. First, we held that "the construction and installation of the drain itself was an affirmative act by the City or its agents, specifically directed toward the [plaintiffs'] property, which had the effect of limiting the use of the [plaintiffs'] parcel." *Id*. at 572. But "any material increase in the flow of water through the drain . . . could *not* have constituted a taking as a matter of law." *Id*. We reasoned that there was no state action to support plaintiffs' inverse condemnation claim on this ground because the increased flow of water necessarily occurred after the city's involvement in the drainage project ceased. *Id*. at 572-573. Thus, we held that "the City can have no inverse-condemnation liability arising out of the flow of water through the privately owned drain." *Id*. at 573.

---

[19] Although unpublished, this Court has allowed an inverse condemnation claim to proceed when the claim stemmed from government involvement in a private construction project on private property. See *Nakfoor v Our Savior Lutheran Church*, unpublished per curiam opinion of the Court of Appeals, issued January 30, 2018 (Docket No. 335257) (denying summary disposition to Drain Commissioner when the plaintiffs alleged that the commissioner "authoriz[ed] or approv[ed] the fill activity that resulted in the increase in the elevation of [a private church's] property, which had the effect of diverting excess storm water onto plaintiffs' property").

This case is distinguishable. Taken as true, plaintiffs' allegations establish that defendants were closely involved in the operation of the dam through the time of its failure. Plaintiffs allege that defendants took active steps to pressure and encourage Boyce to raise the water levels in Wixom Lake. Unlike in *Wiggins*, where the city disclaimed any role in maintenance or repair of the drain after transferring ownership to the private property owners, plaintiffs alleged that defendants maintained operational control over Edenville Dam in the period leading up to its collapse. *Wiggins* therefore does not compel dismissal of plaintiffs' claims. For these reasons, defendants' public use argument lacks merit.

## III. CONCLUSION

The Court of Claims correctly evaluated defendants' motion for summary disposition under MCR 2.116(C)(8). In doing so, the Court of Claims properly limited its review to the pleadings and declined to consider additional documentary evidence. Accepting plaintiffs' factual allegations as true, we conclude that plaintiffs stated viable claims for inverse condemnation.

The decision of the Court of Claims is affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Noah P. Hood